**In the Matter of the WELFARE OF A.M.P.**

**No. C9–93–1289.**

Court of Appeals of Minnesota.

Nov. 2, 1993.

Wright S. Walling, Gary A. Debele, Walling & Berg, P.A., Minneapolis, for appellants Winkler.

Richard M. Arney, Washington County Atty., Douglas H. Johnson, Asst. County Atty., Stillwater, for respondent Washington County Community Services.

Mark J. Vierling, Kevin K. Shoeberg, Eckberg, Lammers, Briggs, Wolff & Vierling, Stillwater, for respondent Father.

Jeanne E. Kass, Oakdale, Richard C. Ilkka, Stillwater, for respondent Mother.

Jennifer M. Dietz, Tracey Ann Galowitz, Lake Elmo, for respondent Minor Child.

Judith Hanson, Bonita Schultz, Washington County Guardian Ad Litem Program, Stillwater, Guardians Ad Litem.

Carol T. Rieger, Jonathan M. Bye, Lindquist & Vennum, Minneapolis, for amicus curiae Adoptive Families of America, Inc.

Considered and decided by DAVIES, P.J., and SCHUMACHER and KLAPHAKE, JJ.

## OPINION

DAVIES, Judge.

The natural parents of A.M.P. each signed a form entitled "Consent to Termination of Parental Rights and Consent to Adoption." Appellants, prospective adoptive parents of A.M.P., seek review of the district court's order allowing the natural father to withdraw his consent. Appellants argue that, absent a finding of fraud, the father's consent to adoption became irrevocable after ten days, or, in the alternative, that the father's consent was not required because he failed to timely file an affidavit stating he intended to retain parental rights. We disagree and affirm.

## FACTS

A.M.P., born on February 25, 1993, is the nonmarital child of respondents K.P. and M.M. K.P., the mother, was 17 years old at the time of A.M.P.'s birth, and M.M., the father, was 20 years old. In March, after several weeks in foster care, A.M.P. was placed with appellants as prospective adoptive parents.

On April 30, Washington County Community Services ("the county") filed a petition to terminate K.P.'s and M.M.'s parental rights. Attached to the petition were two documents, one entitled "Consent of Father to Termination of Parental Rights and Consent to Adoption" and the other entitled "Consent of Mother to Termination of Parental Rights and Consent to Adoption," signed by M.M. and K.P., respectively. The county prepared the consent forms, which contain identical substantive provisions. K.P. signed her consent on April 14 and M.M. signed his consent on April 29. On May 25, having decided to seek custody of A.M.P., M.M. signed a written revocation of his consent to termination of his parental rights.

The petition to terminate parental rights was heard in Washington County on May 26. At the hearing, M.M. asked leave to withdraw his consent to termination and requested access to A.M.P. K.P. also moved for permission to withdraw her consent to termination, conditional on M.M. withdrawing his consent.

Appellants appeared at the hearing and argued that the consents to termination and to adoption had become irrevocable. Appellants had earlier executed a petition for adoption of A.M.P. That petition was filed in Dakota County, where appellants live, on May 26. Appellants also filed a petition for custody of A.M.P. in Washington County. In a written submission, appellants argued that M.M. had lost his parental rights because he failed to timely file a notice of intent to retain parental rights.

By order on May 27, the district court granted appellants leave to intervene in the juvenile proceeding, changed the termination of parental rights petition to a child in need of protection or services (CHIPS) petition, and directed that K.P. and M.M. were permitted to withdraw their consents to the termination of their parental rights. The district court found that M.M. had signed a valid declaration of paternity. M.M. immediately commenced a parentage action, seeking legal and physical custody of A.M.P.

Appellants' adoption petition was transferred to Washington County, and the district court scheduled a joint hearing on the parentage action, the CHIPS petition, and appellants' custody petition, but not the adoption petition. This appeal is from the district court's order allowing M.M. to withdraw his consent.

## ISSUES

I. Did the district court err in construing M.M.'s consent as a consent only to termination of parental rights, not a consent to adoption?

II. Did the district court err in failing to find that M.M.'s consent to adoption was not required because he did not timely file an affidavit of intent to retain parental rights?

## ANALYSIS

The district court's decision to allow M.M. to withdraw his consent to termination of parental rights involves issues of statutory construction. Construction of a statute is a

question of law. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985). This court conducts an independent review of the record in light of the relevant law to determine if the district court reached the proper legal conclusion. *Jadwin v. Minneapolis Star & Tribune Co.*, 367 N.W.2d 476, 483 (Minn. 1985).

This case illustrates the distinction between a proceeding for voluntary termination of parental rights under Minn.Stat. § 260.-221, subd. 1(a) (1992), and a consensual adoption under Minn.Stat. § 259.24 (1992).

## I.

 As an alternative to a voluntary termination proceeding, the natural parent may consent to an adoption. Minn.Stat. § 259.24. A consent to adoption must comply with strict statutory requirements. *Id.*, subd. 5. A parent's consent may be withdrawn for any reason within ten working days after the consent is executed. *Id.*, subd. 6a. On the day following the tenth working day after execution, the consent "shall become irrevocable, except upon order of a court of competent jurisdiction after written findings that consent was obtained by fraud." *Id.* After a decree of adoption is entered, the natural parents are relieved of all parental responsibilities for the child and shall not exercise or have any rights over the child. Minn.Stat. § 259.29, subd. 1 (1992). This serves the commendable purpose of giving finality to adoption.

Appellants argue that M.M. executed a valid consent to adoption under section 259.24 and that, as a consequence, the consent became irrevocable because M.M. did not withdraw it within ten days; appellants

contend the district court thus erred in allowing M.M. to withdraw his consent to the adoption without an allegation of fraud and without an evidentiary hearing or findings of fact on the issue of fraud.

We hold that M.M. consented to voluntary termination of parental rights, not to adoption, and that the ten-day rule of section 259.24, subdivision 6a, does not apply in this case. An adoption proceeding is commenced by the petitioner filing a petition for adoption in the juvenile court of the county in which the petitioner resides. Minn.Stat. § 259.23, subd. 1 (1992). But in this case, no adoption petition had been filed when M.M. signed the consent. The record is thus clear that M.M.'s consent was executed in support of the county's petition to terminate parental rights, not in furtherance of an adoption proceeding.

 The contents of the consent form itself also compel a conclusion that it does not constitute a consent to adoption. There must be "strict adherence to the letter of the law" regarding the dissolution of a parent-child relationship. *In re Alsdurf*, 270 Minn. 236, 239, 133 N.W.2d 479, 481 (1965). Adoption consents

> ought to convey a clear and unmistakable meaning not only to the lawyer and the trained social worker, but also to the layman who is not familiar with our adoption statutes.

*In re Anderson*, 235 Minn. 192, 197, 50 N.W.2d 278, 283 (1951).

In this case, the consent form does not comply with the requirements of section 259.-24, subdivision 5. The form contains explicit language consenting to termination of parental rights, but misleads as to adoption.[1] The

---

1. The form as executed, and in relevant part, reads:

> IN THE MATTER OF THE WELFARE OF [A.M.P.],
>
> **CONSENT OF FATHER TO TERMINATION OF PARENTAL RIGHTS AND CONSENT TO ADOPTION**
>
> * * *
>
> I, [M.M.], being first duly sworn upon oath, deposes and says:
>
> 1. That I am 20 years of age and a resident of the State of Minnesota.

> 2. That I am the father of [A.M.P.], a male child born on 02/25/93.
>
> 3. That with a view to the future welfare of my child, I [M.M.], of my own free will hereby consent, in the presence of the representative of Washington County Community Services, 14900—61st Street North, Stillwater, Minnesota 55082, to the entry of an order by the court terminating all my parental rights to the child and appointing a guardian.
>
> 4. I understand that following the entry of an order terminating my parental rights, the child may be adopted without any further consent by

form indicates that the consent becomes final after ten working days, but it also contains a provision suggesting that the consent does not become effective until it is affirmed by court order. The form, in our view, suffices as a written consent to termination of parental rights under section 260.221, subdivision 1(a), but it fails as a consent to adoption under section 259.24, subdivision 5.

■ Because M.M. effectively consented only to voluntary termination of parental rights, but not to adoption, the ten-day revocation period under section 259.24, subdivision 6a, does not apply. Unlike section 259.-24, the statute on termination of parental rights does not preclude a parent from revoking a voluntary consent to termination for any reason before the court has accepted the consent and ordered termination. *Compare* Minn.Stat. § 259.24, subd. 6a, *with* Minn. Stat. § 260.221. The district court did not err in allowing M.M. to withdraw his consent to voluntary termination of his parental rights.

## II.

■ Appellants also argue that M.M.'s consent to adoption was not required because he failed to timely file an affidavit of intent to retain parental rights pursuant to Minn.Stat.

§ 259.261 (1992). Consent to an adoption "shall not be required of a parent not entitled to notice of the proceedings." Minn.Stat. § 259.24, subd. 1(a). Notice of the adoption hearing must be given to a parent who has filed an affidavit pursuant to section 259.261. Minn.Stat. § 259.26, subd. 1(f) (1992).

M.M. does not claim to be entitled to notice under section 259.26, subdivision 1, on any ground other than that he filed an affidavit pursuant to section 259.261, which provides in part:

> Any person not entitled to notice under section 259.26, shall lose parental rights and not be entitled to notice at termination, adoption, or other proceedings affecting the child, unless within 90 days of the child's birth or within 60 days of the child's placement with prospective adoptive parents, whichever is sooner, that person gives to the division of vital statistics of the Minnesota department of health an affidavit stating intention to retain parental rights.

Minn.Stat. § 259.261, subd. 1 (1992).

On April 14, M.M. executed a "Declaration of Parentage" acknowledging that he is the biological father of A.M.P. The declaration qualifies as an affidavit stating his intention to retain parental rights pursuant to section

---

me and without any further hearing or notice to me.

5. That I understand the English language and fully understand the contents of this document.

6. I have been informed of the consequences of my signing this affidavit and state that my consent is given of my own free will and is not obtained under any duress or under any influence or fraud.

7. I have received written notice from the County Department of Community Services about my right to have the original birth certificate information disclosed or withheld from my child when my child reaches age 21 if my child has been adopted during childhood and later requests such information.

8. I believe my consent to terminate parental rights is for good cause and in my child's best interests.

9. I further understand that signing this consent to terminate parents rights does not act to terminate my parental rights until I appear in Court, affirm my decision before the presiding judicial officer, and a final order terminating parental rights is issued by the Court.

10. That I understand:

I may, for any reason, withdraw this consent to termination of parental rights within the next 10 working days from the date hereof; My withdrawal of consent must be in writing and must be received by the agency no later than the 10th working day following the date upon which this consent is executed and acknowledged;

My consent will become irrevocable on the day following the 10th working day from the date hereof, except upon an order of the court of confident jurisdiction after finding that the consent was obtained by fraud.

WASHINGTON COUNTY COMMUNITY SERVICES WILL SUBMIT YOUR CONSENT TO ADOPTION TO THE COURT. THE CONSENT ITSELF DOES NOT TERMINATE YOUR PARENTAL RIGHTS. PARENTAL RIGHTS TO A CHILD MAY BE TERMINATED ONLY BY AN ADOPTION DECREE OR BY A COURT ORDER TERMINATING PARENTAL RIGHTS. UNLESS THE CHILD IS ADOPTED OR YOUR PARENTAL RIGHTS ARE TERMINATED, YOU MAY BE ASKED TO SUPPORT THE CHILD.

---

(Signature)

\* \* \*

259.261. Minn.Stat. § 257.34, subd. 1(d) (1992). He submitted the declaration to the county for filing on or about that same day. The county's (soon-to-be-abandoned) termination petition, filed on April 30, indicated that M.M. had complied with section 259.261. But the division of vital statistics did not receive M.M.'s declaration until May 27, 92 days after A.M.P.'s birth and 70 days after A.M.P.'s placement with appellants.

■ Appellants argue that M.M.'s consent to the adoption was not required, and that M.M. lost his parental rights because of his failure to comply with section 259.261. Under the facts of this case, however, we hold that M.M.'s declaration of parentage must be treated as timely filed. Provisions abrogating the necessity of parental consent to adoption should be "construed strictly in favor of the parent and the preservation of the relationship." *In re Parks*, 267 Minn. 468, 474, 127 N.W.2d 548, 553 (1964). Here, M.M. executed the declaration of parentage and submitted it to the county within 60 days of A.M.P.'s placement with appellants. The county acknowledged in the termination petition that M.M. had complied with section 259.261, and M.M. had no reason to believe the declaration was not forwarded to the appropriate state agency. (We note that appellants knew of the declaration before their adoption proceeding moved to a conclusion.)

Construing the statute in favor of M.M., we hold that he substantially complied with section 259.261, and his consent to the adoption was required. He withheld his consent.

### III.

■ Two secondary issues require brief discussion. Respondents argue that appeal of the order allowing M.M. to withdraw his consent is moot because appellants do not contest the part of the order allowing K.P. to withdraw her consent. Respondents point out that even if the order allowing M.M. to withdraw his consent is reversed, appellants will not be able to adopt A.M.P. without K.P.'s consent because, even if K.P.'s consent were construed to be a consent to adoption, the consent is invalid on its face because K.P. was a minor and neither her parents nor her guardian signed the consent as required by Minn.Stat. § 259.24, subd. 2 (1992).

■ If, pending an appeal, an event occurs that makes a decision on the merits unnecessary or an award of effective relief impossible, the appeal will be dismissed as moot. *In re Inspection of Minn. Auto Specialties, Inc.*, 346 N.W.2d 657, 658 (Minn.1984). This appeal is not moot, however, because the record indicates that K.P.'s decision to withdraw her consent may have been contingent on M.M.'s withdrawal of his consent.

■ Next, M.M. contends appellants lack standing to raise issues pertaining to his consent in the termination of parental rights proceeding. But appellants were permitted to intervene in the juvenile proceeding, and they were aggrieved by the district court's order allowing M.M. to withdraw his consent. *See In re Getsug*, 290 Minn. 110, 114, 186 N.W.2d 686, 689 (1971) (party to whom the right of appeal is granted is one who is adversely affected by the judgment when it bears directly upon his personal interest). Appellants have standing to bring this appeal.

### DECISION

■ The natural father did not consent to adoption, and the district court properly allowed him to revoke his consent to termination of parental rights. The natural father's consent to adoption was required because he gave timely notice of his intent to retain parental rights. An adoption should never proceed under dubious circumstances. In such matters, preventing the harm from occurring is preferable to attempting to remedy it months later.

Affirmed.