Bonnie KARNES, Appellant,

v.

QUALITY PORK PROCESSORS,
Respondent,

v.

ST. PAUL FIRE & MARINE
INSURANCE COMPANY,
Respondent.

No. CX–93–2113.

Supreme Court of Minnesota.

June 9, 1995.

Warren F. Plunkett, Peter D. Plunkett, Warren F. Plunkett & Associates, Austin, for appellant.

Donald E. Rysavy, Hoversten, Strom, Johnson & Rysavy, Austin, for Quality Pork Processors.

Kay Nord Hunt, Margie R. Bodas, Lommen, Nelson, Cole & Stageberg, Minneapolis, for St. Paul Fire & Marine Ins. Co.

## OPINION

COYNE, Justice.

We review a decision of the court of appeals holding that in a retaliatory discharge action, the district court did not have jurisdiction to rule on the validity of a release from liability contained in a workers' compensation settlement agreement. *Karnes v. Quality Pork Processors,* 514 N.W.2d 597 (Minn.App.1994). We reverse the decision of the court of appeals, reinstate the decision of the trial court, and remand for further proceedings.

In 1989, while employed by Quality Pork Processors, Bonnie Karnes sustained a compensable injury resulting in bilateral carpal tunnel syndrome, and on July 9, 1990, she had right carpal tunnel surgery. On July 16, 1990, Karnes returned to work in a light duty capacity, but 3 days later, on July 19, she sustained a work-related right wrist fracture which was surgically reduced in August 1990. The following month Karnes had to have additional surgery because of plate slippage in the right wrist. St. Paul Fire & Marine accepted liability and paid various workers' compensation benefits, and apparently Karnes returned to work after recovering from the last surgery.

A year later, on November 5, 1991, the parties entered into a settlement agreement which seems to variously describe the consideration as $25,000 or $23,375, which Karnes accepted as full settlement for all claims, including temporary total disability, temporary partial disability, permanent partial disability, impairment compensation, economic recovery compensation, adjustment of benefits, supplemental benefits, permanent total disability benefits, penalties, interest, rehabilitation, retraining, and even actions under Minn.Stat. § 176.82, and "any and all other possible claims under the Minnesota Workers' Compensation Act * * *." Five thousand dollars of the consideration was earmarked for future rehabilitation and retraining.

The agreement also recited that Karnes had voluntarily terminated her employment with Quality Pork and that she had chosen not to retain legal counsel. The agreement was approved by a compensation judge and an award entered pursuant to the agreement.

About 6 weeks later, Karnes applied for unemployment compensation, which was denied on a determination that she had separated from employment due to medical restrictions. At that juncture, Karnes brought

an action for retaliatory discharge in violation of Minn.Stat. § 176.82 (1994),[1] alleging that she had been fired by Quality Pork on November 1, 1991, 5 days before the agreement was signed. She claimed that she had not intended to release the employer from retaliatory discharge liability but that the compensation insurer told her she had to sign the agreement in order to get her workers' compensation benefits.

Quality Pork moved for summary judgment on ground that the action was barred by *res judicata* and collateral estoppel. Quality Pork also claimed the district court lacked jurisdiction over the matter because it was necessary that the settlement agreement be first vacated by the Workers' Compensation Court of Appeals. The trial court decided it had jurisdiction; Quality Pork impleaded St. Paul Fire & Marine as a third-party defendant; St. Paul Fire & Marine successfully moved for certification of the jurisdiction question; and the court of appeals concluded the WCCA had to vacate the workers' compensation settlement before the district court could exercise its jurisdiction over the retaliatory discharge action. *See Karnes*, 514 N.W.2d at 600.

■ The Workers' Compensation Act sanctions settlement agreements that are in conformity with the compensation act, are fair and reasonable, approved by a compensation judge and do not preclude a reopening of an award in order to assure compensation in proportion to the disability. Minn.Stat. §§ 176.461, 176.521 (1994). As we have explained,

> Workers' compensation * * * is social legislation, providing a measure of security to workers injured on the job, with the burden of that expense considered a proportionate part of the expense of production. * * * The system endeavors fairly and fully to compensate the meritorious injury claim. Consequently, the Workers' Compensation Act "permit[s] adjustment of the award in relation to facts subsequently appearing so as 'to assure a compensation proportionate to the degree and duration of disability.'"

*Franke v. Fabcon, Inc.*, 509 N.W.2d 373, 376 (Minn.1993) (citations omitted).

■ The question before us, however, is not whether the settlement award may be vacated to allow an "adjustment of the award in relation to facts subsequently appearing" but rather, whether the release in Karnes' workers' compensation settlement from civil liability arising from a common law cause of action is valid and enforceable in her civil action. A release or covenant not to sue is an agreement not to enforce an existing cause of action against the party to the agreement. The release is governed not by the Workers' Compensation Act but by rules of contract construction. As with any contract, a release requires consideration, voluntariness, and contractual capacity.

> Among factors to be considered in determining the validity and extent of a release are the following: (a) The length of period between the injury and the settlement; (b) the amount of time elapsed between the settlement and the attempt to avoid the settlement; (c) the presence or absence of independent medical advice of plaintiff's own choice before and at the time of the settlement * * *; (d) the presence or absence of legal counsel of plaintiff's own choice before and at the time of the settlement * * *; (e) the language of the release itself * * *; (f) the adequacy of consideration * * *; (g) the competence of the releasor; and (h) whether the injury complained of by the releasor was an unknown injury at the time of the signing of the release or merely a consequence flowing from a known injury.

*Schmidt v. Smith*, 299 Minn. 103, 109–10, 216 N.W.2d 669, 673 (1974) (citations omitted).

---

1. Minn.Stat. § 176.82 (1994) provides:

Any person discharging or threatening to discharge an employee for seeking workers' compensation benefits or in any manner intentionally obstructing an employee seeking workers' compensation benefits is liable in a civil action for damages incurred by the employee including any diminution in workers' compensation benefits caused by a violation of this section including costs and reasonable attorney fees, and for punitive damages not to exceed three times the amount of any compensation benefit to which the employee is entitled. Damages awarded under this section shall not be offset by any workers' compensation benefits to which the employee is entitled.

Duress in obtaining its execution is another ground for avoiding a release. *Wallner v. Schmitz,* 239 Minn. 93, 97, 57 N.W.2d 821, 824 (1953). A release is an affirmative defense to a cause of action, and the validity of a release is a matter for the trial court. *See, e.g., Schmidt,* 299 Minn. at 107–11, 216 N.W.2d at 671–73; *Doud v. Minneapolis St. Ry. Co.,* 259 Minn. 341, 346, 107 N.W.2d 521, 524 (1961).

■ Quality Pork and St. Paul Fire contend that the WCCA has "exclusive authority to vacate or set aside" a workers' compensation settlement, and that is true to the extent that a party seeks an adjustment of an award of compensation resulting from compromised claims arising under the Act. A section 176.82 retaliatory discharge action is, however, a common law cause of action outside the purview of the Workers' Compensation Act, *see Bergeson v. United States Fidelity and Guar. Co.,* 414 N.W.2d 724, 727 (Minn.1987), and jurisdiction is placed in the district court. Inasmuch as the WCCA does not have jurisdiction over matters outside the workers' compensation system, Minn.Stat. § 175A.01, subd. 5 (1994), when a party pleads a release contained in a workers' compensation settlement as an affirmative defense in a subsequent retaliatory discharge action, it is the district court, not the WCCA, that has jurisdiction to resolve the dispute.[2] We therefore reverse the decision of the court of appeals, reinstate the decision of the trial court, and remand for further proceedings.[3]

Reversed and remanded.

2. As for respondents' claims of *res judicata* and collateral estoppel as a bar to the civil action here, it seems to us that it is not possible under the workers' compensation system to enter into a settlement of a retaliatory discharge claim and that it cannot be said that that claim was part of the workers' compensation settlement that was approved by the compensation judge.

3. Respondents appear to suggest that Karnes' failure to tender back the settlement money together with the complexities of the workers' compensation matter require the settlement be vacated under the workers' compensation law before the section 176.82 action can proceed. To be sure "troublesome questions may arise, including the problem of restoration or tender of the consideration for the settlement. But these are matters which must depend for their solution in the first instance upon the discretionary judgment of the trial court." *Doud,* 259 Minn. at 348, 107 N.W.2d at 526 (footnote omitted). One other matter bears noting. While the question before the district court concerned the release from retaliatory discharge liability, Karnes speaks of amending her complaint to include a claim of obstructing and looking for additional *compensation and penalties. Neither the propri*ety nor the content of an amendment of the complaint is before us.