**In re Petition for DISCIPLINARY ACTION AGAINST Dennis W. STRID, an Attorney at Law of the State of Minnesota.**

No. C4–88–1993.

Supreme Court of Minnesota.

July 3, 1996.

Marcia A. Johnson, Director, Craig D. Klausing, Asst. Director, St. Paul, for Appellant.

Dennis W. Strid, Pro se.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action alleging that respondent, Dennis W. Strid, committed professional misconduct. The Director alleges that Strid misrepresented the total amount of his attorney fees to the Department of Labor and Industry and collected fees in excess of the total fees as represented to the Department. After a hearing on the petition, the referee concluded that the Director had failed to show by clear and convincing evidence that Strid had violated the Minnesota Rules of Professional Conduct. The referee recommended that the Director's petition be dismissed. The Director disputes the referee's recommendation and argues that Strid should be indefinitely suspended from the practice of law for a minimum period of two years. We affirm the referee's findings of fact, conclusions of law, and recommendation, and order that the Director's petition be dismissed.

Respondent, Dennis W. Strid, was admitted to practice law in Minnesota in 1962. His practice consisted primarily of workers' compensation cases, employment and business litigation. In 1981, Laurence E. Olson

sought Strid's representation in a workers' compensation matter, seeking temporary partial disability benefits for a back injury he sustained in 1979. Olson had previously obtained workers' compensation benefits from his employer; however, in 1981, Olson's employer discharged him and notified him that his workers' compensation benefits would be discontinued. Strid filed a workers' compensation claim on behalf of Olson with the Department of Labor and Industry (DOLI), seeking additional temporary partial disability benefits. After a hearing, Olson's former employer was required to reinstate the disability benefits. Five years later, in October 1987, Strid commenced a suit on Olson's behalf against Olson's former employer alleging that the employer unlawfully conspired to discharge Olson and deprive him of workers' compensation benefits. This wrongful discharge claim is based on Minnesota Statutes section 176.82, which provides that an employee has a civil cause of action for damages resulting from the discharge from employment, threatened discharge or intentional obstruction of the employee who seeks workers' compensation benefits.

In December 1987, the attorney for the employer's workers' compensation insurer submitted discovery requests in the section 176.82 matter, which included two sets of requests for production of documents, a request for production of statements, and two sets of interrogatories. Strid responded to the discovery requests, objecting to the first request for production of documents as cumulative and burdensome, and submitting answers to the first set of interrogatories. In September 1988, the insurer's attorney submitted a proposal to settle both the workers' compensation claim and the section 176.82 action, and in March 1989, both claims were settled by stipulation. DOLI approved the settlement agreement the following month.

This disciplinary action arises out of a dispute over the amount of attorney fees received by Strid for legal services in settling Olson's claims. Strid and Olson had some discussion about the settlement proposals, and this discussion included the matter of Strid's attorney fees [1]. At the disciplinary hearing, Strid introduced a document describing the proposed settlement: $160,300 in periodic payments; $20,000 up front payment to Olson; and $6,500 in attorney fees to Strid for the workers' compensation action. This document also contained the notation that "Larry will pay bal[ance] of $9,200."

The settlement stipulation resolved both the workers' compensation claim and the section 176.82 claim, and provided that the employer and insurer would pay the $6,500 in attorney fees directly to Strid. The stipulation provided that the $6,500 "shall constitute a full, final and complete settlement of any and all claims for attorney's fees pursuant to this Stipulation for Settlement," and further provided that the civil suit would be dismissed. The stipulation was filed with DOLI, and was reviewed by a compensation judge, who determined that it was in accord with the terms and provisions of Minnesota's workers' compensation statute. The judge ordered payment of the $6,500 to Strid for attorney fees.

On March 28, 1989, Olson signed a release of all claims in the section 176.82 action. Neither the stipulation nor the release allocated the settlement proceeds between the workers' compensation claim and the section 176.82 action. The stipulation did not reference the additional $9,200 which Strid claimed as attorney fees for his representation in the section 176.82 action. Strid claimed that Olson had agreed to the $9,200 fee. At the disciplinary hearing, Olson admitted that he had agreed to pay the $9,200 in attorney fees to Strid out of the settlement proceeds. Olson in fact wrote two checks to Strid for attorney fees. The first check, in the amount of $600, is dated March 30, 1989, two days after the date of the stipulation, and it bears the notation "balance due $8,600."

---

1. At the time Olson's workers' compensation award was issued, attorney fees for services in workers' compensation were limited by statute to 25 percent of the first $4,000 of compensation awarded and 20 percent of the next $27,500 of compensation, for a maximum fee of $6,500. Minn.Stat. § 176.081, subd. 1(a) (1988). Subdivision 1 has been amended since 1988, and now provides that a fee of 25 percent of the first $4,000 and 20 percent of the next $60,000 is permissible without approval. *See* Minn.Stat. § 176.081, subd. 1(a) (1994).

The second check, in the amount of $8,600, is dated April 26, 1989.

On February 23, 1995, nearly six years after the settlement and payment of the attorney fees, the Director filed charges of unprofessional conduct against Strid, alleging that Strid charged an unreasonable fee, did not communicate the basis of his fee, failed to have a written contingent fee agreement, provided no written statement showing how the fee was determined, and made false representations to DOLI regarding the fee. The Director charged that Strid violated Minnesota Rules of Professional Conduct 1.4, 1.5, 3.3(a)(1), 4.1 and 8.4(c). A hearing was held before a panel of the Lawyers Professional Responsibility Board, and a petition for public discipline was authorized only on the basis of Strid's alleged misrepresentations violating Minnesota Rules of Professional Conduct 3.3(a)(1), 4.1 and 8.4(c), which relate to false statements and misrepresentation.

On October 12, 1995, a referee appointed by the Minnesota Supreme Court heard testimony from Olson, Strid and from two experts in workers' compensation practice. The Director's expert opined that the stipulation for settlement was misleading regarding the total amount of attorney fees because the compensation judge, in order to determine whether the settlement is fair and reasonable, must look at the total recovery. The Director's expert believed that the stipulation seemed to say that Olson would receive a $20,000 lump sum payment, plus $160,000 in annuity payments, and that Strid's attorney fees would be paid separately by the employer and were in the total amount of $6,500. The Director's expert opined that Olson would not receive all of the $20,000 because he would be obligated to pay Strid additional attorney fees, the $9,200, out of the $20,000. But the Director's expert did testify that the workers' compensation judge could only approve the workers' compensation portion of the settlement, and not the section 176.82 portion.

Strid's expert, on the other hand, testified that there was nothing misleading in the parties' failure to reference the section 176.82 attorney fees in the stipulation. Strid's expert pointed out that DOLI has no jurisdiction over the section 176.82 issues, and also that the reference in the stipulation to the dismissal of the section 176.82 action indicated that the parties contemplated dismissal of that action concurrently with the settlement of the workers' compensation claim.

Strid testified that he and Olson entered into an agreement on March 8, 1989 regarding attorney fees for Strid's representation on the section 176.82 action. Strid understood that there was a separate contingent fee agreement between him and Olson relating to this action, and that his fee was to be one-third of the recovery, exclusive of costs. Strid further testified that he believed that the amount of the settlement should not have been allocated between the two claims because to do so could result in undesirable tax consequences for Olson. Strid noted that workers' compensation payments are specifically excluded from income tax liability, while a recovery in the section 176.82 action might be subject to income tax.

On November 14, 1995, the referee issued his findings of fact, conclusions of law and recommendation for discipline. The referee found that Strid did not knowingly make a false statement of fact or law, nor did he engage in conduct involving dishonesty, fraud, deceit or misrepresentation. Based on these findings, the referee concluded that the Director failed to show by clear and convincing evidence that Strid violated Rules 3.3(a)(1), 4.1 and 8.4(c), and recommended that the petition be dismissed.

The Director appeals the referee's decision and challenges six specific findings, as well as the referee's conclusion and recommendation. The Director maintains that the referee's failure to find violations of Minnesota Rules of Professional Conduct 3.3(a)(1), 4.1 and 8.4(c) was clearly erroneous, and requests that Strid be indefinitely suspended from the practice of law for a minimum period of two years.

The Director timely ordered a transcript pursuant to Rule 14(e), RLPR; therefore, the referee's findings of fact and conclusion are not conclusive. Rule 14(e), RLPR. The Director conceded at oral argument that

there was not sufficient probable cause to pursue the original charges relating to the written fee agreement, and that the only issue before the court is whether Strid misrepresented facts to the compensation judge or Olson, and whether he behaved dishonestly, in violation of Rules 3.3(a)(1), 4.1 and 8.4(c).[2]

In disciplinary proceedings, allegations must be supported by clear and convincing evidence. *In re Schmidt*, 402 N.W.2d 544, 545 (Minn.1987). This court has described the "clear and convincing evidence" standard as requiring that the Director's allegations be proven by "cogent and compelling evidence." *Id.* The findings of the referee will not be set aside unless they are clearly erroneous. *In re Ruffenach*, 486 N.W.2d 387, 389 (Minn.1992). The clearly erroneous standard means that findings of fact are reversed "only if, upon review of the entire evidence, a reviewing court is left with the definite and firm conviction that a mistake has been made." *Gjovik v. Strope*, 401 N.W.2d 664, 667 (Minn.1987). We have repeatedly afforded great weight to the findings of fact and conclusions of a referee, *Schmidt*, 402 N.W.2d at 545, especially when the referee's findings are based on conflicting testimony or in part on a respondent's demeanor, credibility, or sincerity. *In re Hartke*, 529 N.W.2d 678, 679–80 (Minn.1995).

The Director's charges against Strid involve an alleged misrepresentation to the compensation judge regarding the stipulated settlement agreement which resolved the workers' compensation claim and the section 176.82 action. The Director maintains that Strid knowingly made a false statement to the judge by not specifically disclosing his attorney fees in the section 176.82 action

when the proposed settlement was submitted. In order to address the Director's charges, we must first inquire into the relationship between workers' compensation claims and retaliatory discharge actions under section 176.82.

Minnesota Statutes section 176.82 permits a civil action *outside* the workers' compensation system for retaliatory discharge of an employee seeking workers' compensation benefits, and provides:

> Any person discharging or threatening to discharge an employee for seeking workers' compensation benefits or in any manner intentionally obstructing an employee seeking workers' compensation benefits is liable in a civil action for damages incurred by the employee including any diminution in workers' compensation benefits caused by a violation of this section including costs and reasonable attorney fees, and for punitive damages not to exceed three times the amount of any compensation benefit to which the employee is entitled. Damages awarded under this section shall not be offset by any workers' compensation benefits to which the employee is entitled.

Minn.Stat. § 176.82 (1994).

Minnesota Statutes section 176.081, subd. 1(a) sets the limit on attorney fees in disputed workers' compensation matters without a separate application for excess fees:

> A fee for legal services of 25 percent of the first $4,000 of compensation awarded to the employee and 20 percent of the next $27,500 of compensation awarded to the employee is permissible and does not require approval by the commissioner, compensation judge, or any other party except as provided in clause (b).[3]

---

2. **Rule 3.3. Candor Toward the Tribunal**

    (a) A lawyer shall not knowingly:
    (1) make a false statement of fact to a tribunal;

    *    *    *    *    *    *

    **Rule 4.1. Truthfulness in Statements to Others**

    In the course of representing a client a lawyer shall not knowingly make a false statement of fact or law.

    **Rule 8.4. Misconduct**

It is professional misconduct for a lawyer to:

    *    *    *    *    *    *

    (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

3. Subdivision (b) itemizes certain information which shall be filed with the compensation judge regarding a claim for legal fees, and notes that if the required information is filed and no objection is made as to attorney fees, and the fees do not exceed the $6,500 limitation, the amount is conclusively presumed reasonable and shall be granted. *See* Minn.Stat. § 176.081, subds. 1 & 2

Minn.Stat. § 176.081, subd. 1(a) (1988). An attorney may apply for fees in excess of the $6,500 limit. *See* Minn.Stat. § 176,081, subd. 2. Attorney fees are available in both workers' compensation matters and in section 176.82 actions. At issue in this case is whether attorney fees in the section 176.82 action are subject to review by the compensation judge and whether it was misleading for Strid not to disclose the total amount of fees to the judge who approved the settlement agreement.

This court determined that section 176.82 "entitles the wronged employee to recover damages not covered by the workers' compensation act." *Kaluza v. Home Ins. Co.*, 403 N.W.2d 230, 235 (Minn.1987). Jurisdiction for a section 176.82 action resides in the district court:

> A section 176.82 retaliatory discharge action is, however, a common law cause of action outside the purview of the Workers' Compensation Act, * * * and jurisdiction is placed in the district court. Inasmuch as the WCCA does not have jurisdiction over matters outside the workers' compensation system, * * * when a party pleads a release contained in a workers' compensation settlement as an affirmative defense in a subsequent retaliatory discharge action, it is the district court, not the WCCA, that has jurisdiction to resolve the dispute.

*Karnes v. Quality Pork Processors*, 532 N.W.2d 560, 563 (Minn.1995).

In *Karnes*, we were asked to determine whether a release and settlement agreement in workers' compensation was also a valid release from civil liability in the civil action under section 176.82. In holding that these two claims were independent of each other, we said:

> it seems to us that it is not possible under the workers' compensation system to enter into a settlement of a retaliatory discharge claim and that it cannot be said that the [section 176.82] claim was part of the workers' compensation settlement that was approved by the compensation judge.

*Karnes*, 532 N.W.2d 560, 563 n. 2. Because jurisdiction over the workers' compensation

claim and the section 176.82 claim resides in two distinct systems, and because the section 176.82 action is not part of the workers' compensation matter, we conclude that there is no obligation to place a section 176.82 settlement before a DOLI compensation judge for review and approval. Having concluded this, it follows that Strid was not required to submit the section 176.82 settlement to DOLI for review.

We next turn to the Director's contention that six of the referee's findings are clearly erroneous. In the first challenged finding, the referee determined that "[t]he parties conducted written discovery and then began negotiations to settle all claims." The Director asserts that Strid introduced no evidence that he engaged in any written discovery. Strid, however, answered interrogatories posed by the employer's counsel and responded to a request for the production of documents. This constitutes evidence that Strid "engaged" in discovery, and the referee's finding in this regard is not clearly erroneous.

The referee also found that Strid "negotiated an additional $6,500 cash payment directly to himself in the form of workers' compensation attorney fees in order to enhance the total up front cash distributions." Strid points out that Olson wanted no less than a $20,000 up front payment. Strid therefore negotiated that the $6,500 in attorney fees would not be deducted from Olson's $20,000 up front lump sum, but rather would be paid to Strid in addition to the $20,000 up front payment to Olson, but out of the same total settlement amount. The referee's finding in this regard is not clearly erroneous.

The Director next asserts that the "referee found that the payment by Olson in the sum of $9,200 represented the present value of attorney fees for the district court action." The actual finding reads, in pertinent part: "Olson agreed to pay Respondent the sum of $9,200 in one lump sum as the present value of attorney fees for the District Court action. Though no calculation was offered as to the exact determination of total attorney fees,

(1988). Minnesota Statutes section 176.011, subdivision 8 (1988) defines "compensation" as

including "all benefits provided by this chapter on account of injury or death."

there is no evidence that this amount received by Respondent was greater than the one third contingent fee which was agreed upon." Strid testified that he based the $9,200 figure on a fee of one-third of $60,000, or $20,000, and arrived at $9,200 as the present value of $20,000. The referee's finding that the amount received by Olson was no greater than the one-third contingent fee which was agreed upon is not in conflict with the evidence and is not clearly erroneous.

The referee also found that the stipulation was drafted to avoid allocation of payment to a particular claim, and that the stipulation was drafted in this manner to take advantage of possible income tax benefits to Olson. The referee further found that the settlement value of Olson's claim under the workers' compensation statute was unknown. The Director asserts that because there would be a tax benefit to Olson if the entire settlement were characterized as a settlement of the workers' compensation claim, the entire settlement amount must be allocable to the workers' compensation claim. It then follows, according to the Director's argument, that the value of the section 176.82 settlement is nothing, and that one-third of nothing is nothing; therefore, Strid would not be entitled to seek any attorney fees for the section 176.82 action, let alone $9,200.

Strid noted that in a workers' compensation matter, the employer and the employee may settle a case and draw a release which covers all claims without any determination of a particular period of disability to which it applied. *See Department of Employment Security v. Zroker*, 280 Minn. 286, 159 N.W.2d 190, 192 (1968). Strid testified that he requested that the proceeds of the stipulation not be allocated to any particular claim in order to allow both sides to the settlement to gain whatever tax advantage they could from a nonallocation of the funds against particular claims. The referee's finding that the settlement was drafted to avoid allocation to a particular claim is not clearly erroneous.

With regard to the referee's finding that the value of the workers' compensation claim is unknown, the Director also contends that the value of the workers' compensation claim is determined by the fact that the award is $6,500—the maximum fee allowed in a workers' compensation action without making a separate application for excess fees under Minn.Stat. § 176.081, subd 2. Strid responds that if the $6,500 limit on attorney fees determines the value of the claim, it must be the minimum value, or $31,500, necessary to arrive at the $6,500 attorney fee limit. Neither of these arguments is conclusive as to the value of the workers' compensation portion of this settlement, and the referee's finding that the settlement value of the workers' compensation claim was unknown is again not clearly erroneous.

Lastly, the referee found that Strid did not knowingly make a false statement of fact or law, nor did he engage in conduct involving dishonesty, fraud, deceit or misrepresentation. Because we have already concluded that Strid was not required to submit the settlement in the section 176.82 action for review together with the settlement of the workers' compensation claim, the referee's finding that Strid did not knowingly make a false statement in this regard is not clearly erroneous.

While there may be some circumstances in which it is necessary or advisable to disclose attorney fees in workers' compensation settlement agreements, here we determine that the record supports the referee's findings and conclusions. Our review of this record does not leave us with the definite and firm conviction that the referee made a mistake. The Director has not supported the allegations in the petition by clear and convincing evidence. Because the facts are not sufficient to indicate that Strid violated the applicable disciplinary rules, and because the findings and conclusion of the referee are not clearly erroneous, the petition for discipline must be dismissed.

The Director's petition is dismissed.